UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **DENNIS SIGMAN, D.D.S.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 1:16-0020 |
| **TENNESSEE VALLEY AUTHORITY,** | ) Judge Sharp |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND PRELIMINARY INJUNCTION ORDER

Pending before the Court is Plaintiff Dennis Sigman's Motion for Temporary Restraining Order and/or Preliminary Injunction (Docket No. 2). After the Motion was filed, the parties entered into an agreement to maintain the *status quo* pending a hearing on the request for a preliminary injunction. That hearing was held in Columbia, Tennessee on May 4, 2016. For the following reasons, Plaintiff's request for a preliminary injunction will be granted, albeit tailored to the specific issues to be tried in this case.

## I.

The Court assumes familiarity with the evidentiary hearing held on Plaintiff's Motion. Therefore, only a bit of background is necessary to place the parties' arguments into perspective. Plaintiff owns property located at 2428 Hidden Lake Circle in Columbia, Tennessee. That property is adjacent to a transmission line operated and maintained by the Tennessee Valley Authority ("TVA"), which has a transmission line easement across Plaintiff's property.

In February 2016, Plaintiff was informed by the TVA that it planned to perform right-of-way maintenance on his property. In early March 2016, TVA representatives met with Plaintiff and identified 14 trees on the right-of-way that would be cut, and 10 that would not be cut. At Plaintiff's

1

request, the decision was reconsidered. After visiting the property and examining the trees, John Dooley, the Manager of Right-of-Ways for TVA's west service area, upheld the decision to cut 14 trees.

The TVA's transmission line vegetation maintenance guidelines have been the subject of prior litigation. After the TVA adopted new guidelines in 2012 that would allow removal of trees along its transmission lines that had or would reach 15 feet, suit was filed in the Eastern District of Tennessee challenging what is colloquially referred to as the "15-foot rule." The district court granted summary judgment in favor of the TVA.

On appeal, the Sixth Circuit observed that, "[i]n the past, TVA has given the right-of-way specialists discretion to remove, or not remove, trees within the border zone," but "[t]he new rule appears to eliminate that discretion." Sherwood v. Tenn. Valley Auth., 590 Fed. App'x 451, 460 (6th Cir. 2014). It determined a remand to be appropriate because the National Environmental Policy Act ("NEPA"), 42, U.S.C. § 4321, *et seq.*, "requires federal agencies to consider the significant environmental effects of a proposed action," and the TVA had not submitted an administrative record that showed it considered the environmental consequences of the newly enacted 15-foot rule. Id. at 453, 462-63.

On remand, the TVA acknowledged in the district court that it had not created a separate administrative record for the 15-foot rule. The TVA claims that, as a consequence, it has reverted to using the 2008 guidelines. Those guidelines allow tall growing trees to be cut, and low growing trees to remain insofar as they do not present a hazard to the transmission lines.

The Complaint in this case is in two counts. In Count One, Plaintiff alleges a violation of NEPA because the TVA did not prepare or publish an environmental impact statement prior to

implementation of the 15-foot rule.  In Count Two, Plaintiff alleges an unlawful taking.

## II.

In deciding whether to grant an injunction pending a trial on the merits, the Court must consider four factors: (1) whether the party seeking injunctive relief has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the injunction is not entered; (3) the potential harm the injunction would cause the opposing party or others; and (4) the public interest.  See, Bays v. City of Fairborn, 668 F.3d 814, 818-19 (6th Cir. 2012); Tumblebus, Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005).   "'These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together.'" Ne. Ohio Coal. for Homeless and Serv. Emps. v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006) (citation omitted); accord, United States v. Contents of Accounts, 692 F.3d 601, 608 (6th Cir. 2011).  The Court "'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" Certified Restoration Dry Cleaning Network, LLC v.  Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)  (quoting Jones v. City of Monroe, 341 F.3d 474, 476 (6th Cir. 2003)).

### A.

With regard to the likelihood of success on the merits, even though a plaintiff "'is not required to prove his case in full at a preliminary injunction hearing," he or she is required to "'show more than a mere possibility of success.'" Id. (citations omitted).  On the other hand, " a finding that there is simply no likelihood of success on the merits is usually fatal." O'Toole v. O'Connor, 802 F.3d 783, 788 (6th Cir. 2015) (quoting Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir.2000)).

3

Plaintiff has shown more than a mere possibility of success, at least with respect to his claim under NEPA.[1] In arguing otherwise, Defendant asserts:

> Contrary to Plaintiff's assertion that the 15-foot rule was applied in making TVA's March 2016 decision to cut fourteen trees on the right-of-way across his property, the administrative record for TVA's decision shows that the deciding TVA official was aware that the 15-foot rule had been suspended, and that the TVA official in making the challenged decision did so under the 2008 guidelines and did not apply the 15-foot rule. The TVA official's use of the 2008 guidelines (and not the 15-foot rule) is further evidenced by the fact that under the challenged decision, some trees on the right-of-way taller than 15 feet will not be cut, and other trees on the right-of-way that are likely to grow taller than 15 feet will not be cut.

(Docket No. 15 at 9). It also argues "there is no motive alleged or shown for the TVA official to ignore the mandated 2008 guidelines and instead utilize guidelines which he knew had been suspended and should not be followed." (Id. at 9-10).

Defendant's assertions make sense. However, the only thing supporting the notion that the 15-rule was not used is a declaration from Mr. Dooley. He could have been called as a witness at the evidentiary hearing, but was not. The Court has no basis to judge his credibility.

On the other hand, both Plaintiff and his assistant testified at the hearing that Mr. Dooley informed them that the trees were to be cut in accordance with the 15-foot rule, and they suggested some animosity between the parties given that a television crew had been called to the area when the TVA was making its selection decisions on which trees to cut. That testimony was not shown to be incredible.

If what Plaintiff and his assistant testified to was true, and if Mr. Dooley made his decision based even in part on the 15-foot rule – points which the court need not decide at this juncture –

---

[1] The Court expresses no opinion on Plaintiff's takings claim, other than to note that he bought the property subject to an easement through which the TVA purchased in perpetuity the right to cut vegetation on the property.

then it would suggest a violation of NEPA in light of Sherwood. That testimony is sufficient to call for more deliberate investigation and weighs in favor of an injunction. See, Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 402 (6th Cir. 1997) ("it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation").

**B.**

"After determining that a plaintiff has demonstrated a substantial likelihood of success on the merits of his underlying claim, the second factor that a court must consider when deciding whether to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction." Certified Restoration Dry Cleaning, 511 F.3d at 550. "'A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." Id. (quoting, Overstreet v. Lexington—Fayette Urban Cnty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002)).

Clearly Plaintiff can be compensated for the loss of trees under his unlawful takings claim. In fact, he requests compensation for "pecuniary losses" under Count II.

The same might not be so regarding his NEPA claim, however. "Environmental injury, by its nature can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 545 (1987); see also, Ky. Coal Ass'n, Inc. v. Tenn. Valley Auth., 68 F. Supp. 3d 685, 701 (W.D. Ky. 2014) (citation omitted). ("'In the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of a major federal action.'"). Moreover, if the cutting is allowed to go forward and it turns out that allowance was in error, it is unclear how a 100-year-old oak tree can

5

be replaced. This factor, too weighs in favor of an injunction.

**C.**

With regard to the third factor, Plaintiff argues that there will be no substantial harm between now and the time this case can be heard on the merits. In response, Defendant asserts that "[t]he risk of potential harms is well-documented and substantial, as evidenced by the 2003 electric power blackout," which the Sixth Circuit in Sherwood described as involving the loss of power to approximately 50 million people for up to two days caused by a tree that came in contact with power lines. (Docket No. 15 at 11). According to Defendant, "[t]hat kind of risk" – the "2003 cascading blackout that . . . cost the United States economy an estimated $4 billion to $10 billion" is "particularly apparent with respect to the large oak tree on Plaintiff's property as it could have an impaired root structure because of its proximity to Plaintiff's swimming pool and if it were to fall toward the transmission line, it would likely strike and break the line and thereby cause a loss of power to an unknown number of consumers, business, and institutions." (Id. at 11-12).

The Court is unpersuaded by Defendant's parade of horribles. There is no evidence that the oak tree has an impaired root structure, nor is it clear that the oak tree would even hit the power lines were it to fall. The pictures introduced by Defendant at the evidentiary hearing are far from conclusive on this point. In fact, given the height of the tree, its distance from the wires and towers, and the likely trajectory of a fall, the pictures can be viewed as actually cutting against the suggestion that the tree would impact the transmission lines. Further, there is no evidence that any of the 14 trees presently pose a real threat to the power lines.

The only real harm that this Court sees is a delay. That harm will be ameliorated to some extent because the Court intends to expedite and try this matter as soon as is practicable.

**D.**

The fourth and final factor does not weight heavily in the analysis in this case. That said, it is in the public's interest to ensure that claims are fully presented on the merits where possible, and that the requirements of the law are being met by all.

**III.**

For the foregoing reasons, Plaintiff Motion for Temporary Restraining Order and/or a Preliminary Injunction (Docket No. 2) is hereby GRANTED, although not to the extent requested. He seeks an injunction to prohibit the TVA from cutting trees and vegetation on his property until the TVA has produced an environmental impact statement in accordance with Sherwood. It is clear from the record, however, that the TVA has no administrative record regarding the 15-foot rule and the Court cannot expect the TVA to produce something which it does not have, nor require it to undertake a process which may be unnecessary given that it claims the decision to cut the trees was not made in accordance with the 15-foot rule, but rather the 2008 Guidelines. As such, the Court determines that a preliminary injunction should be granted only until a trial can be held on the issues of (1) whether or not the 15-foot rule was used in determining which trees were to be cut, and (2) whether there was an unlawful taking.

A bench trial in this case will be held in Columbia, Tennessee on Monday, August 1, 2016, commencing at 1:30 p.m. on the foregoing two issues. Until then, the *status quo* shall remain the same. Defendant shall not cut any trees on Plaintiff property, unless an unforseen and entirely justifiable emergency arises that requires cutting trees to preserve the integrity of the power lines, at which time the Court will be promptly notified.

Plaintiff shall post a bond in the amount of $1,000 as security for this preliminary injunction.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE